MAYFIELD FANNIN v. STATE.

No. A-7130. Opinion Filed Oct. 4, 1930.
(291 Pac. 989.)

Phillips, Boner & Phillips and MacDonald & Mac-
Donald, for plaintiff in error.

J. Berry King, Atty. Gen., and Smith C. Matson, Asst.
Atty. Gen., for the State.

DAVENPORT, J.   The plaintiff in error, hereinafter
for convenience referred to as the defendant, was by in-
formation charged jointly with Roy Tillett and H. Frank
Moore with the crime of murder.   The defendant, May-
field Fannin, was convicted of manslaughter in the first
degree and his punishment fixed at five years in the state
penitentiary.   Motion for a new trial was filed, considered,
overruled, and defendant duly excepted.

The testimony in this case shows the killing occurred
at an abandoned house in the northeast part of Bryan
county, near the town of Matoy.   The parties, who were
intimate acquaintances and friends, had been together for
more than a day prior to the killing.   On the day of the
killing, Fannin, Tillett, Moore, and McBride left the de-
fendant's home on foot.   The testimony of the defend-
ants Tillett and Moore tends to show they left the home
of the defendant for the purpose of seeing a span of mules
that the deceased, Frank McBride, wanted to buy from
Fannin; when they left the house they took a 22-caliber

rifle belonging to Fannin with them; it is claimed they took the gun for the purpose of killing squirrels; when the deceased was found he had in his possession two butcher knives. The testimony shows the only persons present at the scene of the difficulty were the defendant Mayfield Fannin, Roy Tillett, and Frank Moore; that on the way to the abandoned house where the difficulty occurred they met Dock Plant, a neighbor, driving his team; Plant asked the parties to go with him to this abandoned house to assist him in loading a stove into the wagon; the stove was loaded in the wagon and Plant drove away; a shower of rain came up, and the defendant McBride, Moore, and Tillett remained at the house and engaged in shooting dice; one of the dice was lost, and they looked under the house, but could not find it, and the testimony on behalf of the parties present shows the deceased became angered at the defendant and accused him of losing the dice in order to break up the crap game; that the dice could not be found, and when the question of the mules came up they had some controversy about that; and finally it is contended the deceased tried to cut the defendant with one of the butcher knives, and did succeed in cutting him on the hand. The testimony of the defendant shows that deceased made an assault on him with the butcher knife, and in order to protect himself he fired the 22-caliber rifle, inflicting the wound upon the deceased from which he died. The defendant in his testimony insists that up to the time of the difficulty he and the deceased had been good friends, and that he only fired the shot when he believed he was in danger of losing his life or receiving great bodily harm at the hands of the deceased.

It is the contention of the state that the defendant suggested to the deceased, when the mule trade was being

discussed, that he would buy the mules and give the deceased a note for them provided the deceased would give him credit for $17.50 the defendant claims he had paid for McBride to an attorney in Atoka; that the deceased resented this statement, and the trouble arose from the conversation that grew out of the contemplated trade between the deceased and the defendant. The defendant contends that he only acted in the necessary self-defense, and would not have fired the shot had he not believed at the time of the firing that the deceased was going to do him great bodily harm with the knife the deceased was assaulting him with.

This is, in substance, the testimony of the defendant, and Tillett and Moore, the two witnesses who were jointly charged with the defendant.

The defendant has argued eleven errors alleged to have been committed by the court in the trial of his case. The record discloses that the defendant demurred to the information on the ground: First, that the information filed in this cause does not follow the requirements of the laws of Oklahoma as provided in matters of this kind. Second, that the facts set out in the information do not state a cause of action against these defendants or either of them.

There is nothing in the record to show that this demurrer was passed on by the court. After this demurrer was filed, the record shows that the case was called for trial.

After a careful examination of the information, we hold that it stated sufficient facts to advise the defendants of the charge they were expected to meet. The defendants in this case were charged with the crime of assault on the said Frank McBride with a rifle, and the

use of the pleader in the information, after alleging the assault on Frank McBride with a rifle, of the words, "and other instruments," did not affect the sufficiency of the charge in the information of shooting the deceased Frank McBride with a rifle.

It is further argued that the court erred in refusing to permit the defendant to cross-examine Nellie McBride, a daughter of the deceased, with reference to the defendant having at one time assisted her father in the burial of one of the children. The record discloses that the trial court permitted the defendant to cross-examine Nellie McBride and show that the defendant and her father, prior to this trouble, were good friends. This we think was sufficient, and the question with reference to the defendant assisting in the burial of the child was immaterial and properly excluded from the jury; when the court permitted the defendant to show that prior to the difficulty the defendant and the deceased were friendly, it permitted the defendant to show everything that was competent in this connection, and it would add nothing to the friendship of the parties to show the various details of their friendship.

It is further urged by the defendant that the court permitted counsel for the state to ask certain improper questions of the codefendant Moore, who took the witness stand in his own behalf, and in behalf of this defendant.

The record discloses that the testimony complained of by the defendant is where Moore, who was one of the defendants, on cross-examination was asked:

"Didn't you see the defendant Mayfield Fannin take his right hand and grab the wrist of McBride with his right hand, and put his hand against his breast and shove McBride back?"

The defendant contends that in asking this question of the witness Moore there was no proof upon which to base the question as to the defendant Fannin shoving the deceased back with his right hand. With this contention we cannot agree, as the record discloses that in the examination of the defendant Fannin the following appears:

"Q. Tell what happened on the porch? A. After we got back on the porch, we was all talking and I told the boys 'let's go home' and my target was setting close to this water shelf and I reached down and got it and started home and McBride—I made I guess two steps—he said, 'What are you going to do about the mules?' and I said, 'Frank, I will let you have them for $125, if you will put that $17.15 in that I paid for you at Atoka and I will let you have them and make a note for next fall.'

"Q. What did he say? A. He said, 'I don't owe you a damn cent and I am going to have that dice, you son of a bitch, or cut your God damn head off'—I—he was standing like that and pulled his breeches up and he had a butcher knife and was coming at me like this and I throwed my hand up like this and pushed him back again and asked him not to do it—

"Q. Show the jury what position he was in? A. Like this (indicating).

"Q. Was he as tall a man as I am? A. No, sir.

"Q. Was he over— A. Like this.

"What did you do? A. I grabbed the gun and caught hold of it like this and fired."

It is further urged by the defendant that his conviction is not sustained by sufficient evidence, and the defendant invites the attention of the court to the fact that there were no eyewitnesses to the difficulty except the three defendants who were on trial charged with the mur-

der of McBride, and their stories all agree as to how the trouble arose.

There is no conflict in the testimony as to what brought on the trouble, and it is true the only witnesses to the shooting were the three defendants. The jury heard their testimony and reached its verdict from the statements made by the defendants. This court has repeatedly held that the jury is the sole and exclusive judge of the weight of the evidence and the credibility of the witnesses, and if the evidence is such that different inferences may properly be drawn from it, the determination of the jury will not be interfered with unless there is no competent evidence to sustain the conviction, or that the verdict appears to have been influenced by passion or prejudice. There is nothing in the record which indicates that the jury was influenced by prejudice or passion. The testimony is sufficient to sustain the verdict.

Other errors are assigned which do not possess sufficient merit to warrant a reversal of this case. The defendant was accorded a fair and impartial trial. The court substantially instructed the jury on the law applicable to the facts in the case. There being no errors in the record of sufficient merit to require a reversal, the judgment is affirmed.

EDWARDS, P. J., and CHAPPELL, J., concur.